(No. 6126.   December 13, 1934.)

STATE, Respondent, v. CLEO CALICO, Appellant.

[38 Pac. (2d) 1002.]

Chapman & Chapman, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

MORGAN, J.—On the afternoon of August 13, 1933, ten persons were riding in and upon a Chevrolet sedan automobile, along the highway near Kimberly in Twin Falls County. The driver and another man rode in the front seat and the rest of the party, consisting of eight boys and girls of high school age, rode on the running-boards, front fenders and rear bumper, the rear seat being unoccupied. Appellant, driving a Buick automobile, in the front seat of which were his son, aged five years, and his brother, a grown man, overtook and passed the Chevrolet and as he was passing it a collision occurred which caused it to leave the pavement and it was wrecked against a telephone pole at the roadside. Edith Atkin, a girl 15 years old, riding on the right front fender of the Chevrolet, was thrown therefrom and killed. Appellant was informed against and tried for manslaughter on the theory that the death was caused by his negligence. He was convicted and moved for a new trial which was denied. This appeal is from the judgment and from the order denying a new trial.

Evidence produced by respondent tends to show appellant, in attempting to pass the Chevrolet, drove to the left of the road and for some distance the left wheels of his auto-

mobile were in the gravel, off the pavement; that he turned back onto the paved portion of the road too sharply and crossed the center line of the pavement and drove the Buick against the Chevrolet, causing its driver to lose control of it and resulting in the death of Edith Atkin. It is clear that if appellant was guilty of any negligence it consisted in attempting to return to the right side of the highway before completely passing the Chevrolet.

Evidence on behalf of appellant is to the effect that his automobile was not driven negligently; that the Chevrolet swerved to the left of the center of the highway as the Buick was passing it, thereby causing the collision; that it occurred on the left of the center of the pavement, and resulted from the negligent and improper driving of the automobile on which deceased was riding.

Wilma Hansing, one of the girls riding on the back bumper of the Chevrolet, was produced as a witness on behalf of respondent and was asked:

"Q. Then as he swerved to the left with his car how did he manage it? How did the defendant manage his car after he swerved?

"A. He seemed to guide it back towards our front fender; it seemed as if he was wanting to get awful close to it."

A motion was made by appellant's counsel to strike the answer as not being responsive and because it was a conclusion of the witness, on which the court ruled: "Well, I think it may stand, as to how it appeared to her."

The ruling was erroneous. What actuated appellant in driving his automobile as he did was a question for the jury to be answered from facts testified to by the witnesses and not their conclusions. In 22 C. J. 485, the rule is stated thus:

"The normal function of a witness is merely to state facts within his personal knowledge, and under ordinary circumstances his opinion or conclusion with respect to matters in issue or relevant to the issue cannot be received."

Sheriff Prater, of Twin Falls County, visited the wreck shortly after the collision occurred and was called by re-

spondent to testify to what he saw and heard, material to the issue, while there. On cross-examination he was asked with respect to a statement said to have been made at that time and place by James Robinson, also a witness for respondent, being a statement which had been incorporated in an impeaching question to Robinson when he was on the witness stand. The sheriff was asked: "Q. I will ask you whether or not, at that time, Mr. Robinson made the statement to you that there was a third car that had caused the accident, and that Cleo was not to blame?" Counsel for respondent objected to the question on the ground it was not proper cross-examination and the court sustained the objection. It is now argued Robinson could not be impeached by showing, on cross-examination of another witness, he had made a statement, inconsistent with his testimony, which he denied making on his cross-examination. This is probably correct, but the objection was not made on that ground and should have been overruled. It was proper to cross-examine the sheriff about a statement which, if made to him, was one he should have remembered. It was a proper test of his recollection of what he saw and heard, and the ruling on the objection was erroneous.

The cross-examination of witness Robinson shows that, August 13, 1933, after the wreck, a conversation occurred at his residence at which he, H. C. Wheeler, H. L. Hull and Ross and Ham Calico, brothers of appellant, were present. He was asked:

"Q. I will ask you whether or not you stated to Ross Calico and his brother, Ham Calico, in the presence of Mr. Hull and Mr. Wheeler, that there was a third car that caused the wreck, and that if you could see those boys, or, that if Ross Calico could see those boys that were on the bicycles he could find out who this party was?

"A. No."

Mr. Hull was produced as a witness and a question was propounded to him as to whether the above quoted statement was made, in substance, by Robinson at the time and place and in the presence of said persons, to which counsel for

respondent stated: "I object to that," and the court ruled: "Yes, I think the objection will be sustained. That has been gone over. It is cumulative."

Prior to this ruling Ham Calico and Mr. Wheeler had testified that Robinson made the statement which he denied having made on his cross-examination in respect to the impeaching question.

The ruling was erroneous. The question as to the credibility of Robinson was for the jury. It was appellant's right to impeach him by the persons present at the time the statement he denied making is said to have been made. (I. C. A., sec. 16–1210.) If it is within the discretion of a trial judge to limit the number of persons who may be called to show a witness has made a statement inconsistent with his testimony, it was an abuse of that discretion to refuse to permit more than two, of the four who were present and heard the statement, to testify to having heard it.

As a part of his charge to the jury the judge read portions of I. C. A., sec. 48–504, intended to regulate the speed of vehicles approaching within fifty feet of railroad grade crossings, when passing schoolhouses, approaching highway intersections, traversing curves, traveling in business and residence districts as defined in the law, and making it *prima facie* unlawful to exceed the speed limits therein specified. The collision in this case occurred on a straight highway, in the country, near no schoolhouse, and not near enough to a railroad crossing or highway intersection to make the law incorporated in the instruction applicable. These provisions of the statute have no application to any evidence introduced, could have had no other effect than to mislead or confuse the jury, and reading them as a part of the charge was erroneous.

*State v. Sims*, 35 Ida. 505, 206 Pac. 1045, involved an appeal from conviction of adultery. The trial judge had instructed the jury: "You may take into consideration any evidence tending to show an opportunity upon the part of

the defendant, Harold M. Sims, and Ruth Emile Jester, to commit the crime charged in the information. Evidence of an adulterous disposition or inclination, together with evidence of an opportunity to commit the crime, would be sufficient to justify you in bringing in a verdict of guilty against the defendant, if this evidence satisfies you beyond a reasonable doubt that the crime charged in the information was committed.''

Commenting on that instruction this court said: ''There is no evidence tending to show an adulterous disposition or inclination, like kissing, embracing and other acts of familiarity in the presence of others, such as are usually relied upon to show such inclination. The instruction was therefore not called for by the evidence, and should not have been given.'' We approve and follow the portion of that opinion copied in this paragraph.

However, the court in that case further said: ''The question narrows to this: Is the fact that the court gave an instruction as to the effect of evidence of adulterous disposition or inclination reversible error? We must assume that the jury was composed of reasonable men, of average intelligence, and that, as such, they considered the evidence. We cannot assume that they concluded there was evidence of circumstances showing an adulterous disposition or inclination simply because the court mentioned those words in his instruction, when in fact there was no such evidence. We must assume that they acted on the evidence itself.''

We can neither approve nor follow that portion of the opinion. To do so would require us to assume the jury knew what parts of the law, stated in the instruction, were applicable and what parts were inapplicable to the facts of the case, and to place upon it the responsibility of segregating the law which should have been given from that which should not, and of following the law as the judge should have stated it rather than as he did state it. To do this would make the jurors the judges of the law applicable to the case, which they are not.

The judgment and order appealed from are reversed and the cause is remanded with instruction to grant a new trial.

Holden, J., concurs, and Givens and Wernette, JJ., concur in the conclusion reached.

BUDGE, C. J., Concurring Specially.—I have concluded to concur in the reversal of the judgment in the above-entitled cause upon the ground that the court erred in refusing to permit defendant to call and in refusing to permit the witnesses Hull and Ross Calico to testify for the purpose of impeaching the witness Robinson.